Submitted on record and briefs February 7, affirmed October 21, reconsideration denied December 9, petition for review denied December 22, 1992 (315 Or 272)

# STATE OF OREGON,
*Respondent,*

*v.*

# VICKIE SNOW HUCKABA,
aka Vickie Hagar,
*Appellant.*

(10-90-04874; CA A68198)

839 P2d 768

Theresa M. Kohlhoff, Wilsonville, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael M. Pacheco, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Defendant appeals her conviction for possession of methamphetamine, ORS 475.992(4)(b), and assigns error to denial of her motion to suppress. The issue is whether the police lawfully conducted a search of her home, including whether she voluntarily consented to the search and to its scope. We affirm.

We take the facts from the trial court's findings and the evidence that is consistent with them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). In April, 1990, four officers arrived at defendant's home with an arrest warrant and were admitted. When the officers saw defendant, they realized that, although she was the person named in the warrant, she was not the person whom they had intended to arrest. They saw a "water pipe" and less than an ounce of marijuana laying on a table in plain view. Defendant told them that she had a prescription for the marijuana and gave them her doctor's phone number. Through the police dispatcher, the officers learned that defendant did not have a prescription. Meanwhile, defendant told the officers that she did not have any other drugs and that she had no objection to their searching her home.

In one room, the police found small plastic bags with the corners clipped off. One of the officers testified that, on the basis of his training and experience, he knew that such bags often contained cocaine or methamphetamine. They also found cotton swabs, an unassembled scale and methamphetamine residue in defendant's bedroom. The police then requested her permission to search further. Defendant grew angry and refused. Officer Finnerty said that he would apply for a search warrant and that, until he acquired it, he had to secure the premises. Defendant then consented to a search of the house by signing a consent card. Police dogs sniffed out four bongs in the china cabinet but found no other drugs. Defendant was tried and convicted for possession of methamphetamine.

■ Defendant concedes that the officers were lawfully present in her home. Relying on *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), she contends that the officers lost authority to conduct a further search once they observed a

small amount of marijuana in plain view. *Porter* is distinguishable, because the officer there continued to search after exhausting his statutory authority. ORS 810.410(3)(b). Here, no statute limited the authority of officers to search.

■    Defendant next argues that her consent was not voluntary. If her consent was voluntary, the evidence is admissible. *State v. Vu*, 307 Or 419, 770 P2d 577 (1989). She contends that her consent was involuntary because it followed illegal police conduct. What she claims to have been illegal police conduct was not.

Finally, defendant asserts that the search exceeded the scope of the consent. Initially she gave unlimited consent and objected only after the police found methamphetamine. Even if she withdrew her consent at that point, she was not prosecuted for anything found after that, so any search beyond the scope of her consent is irrelevant in this case.

Affirmed.