Argued and submitted January 30, 2019, affirmed May 20, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAIME McCRAY,
*Defendant-Appellant.*

Lake County Circuit Court
16CR34260; A165824

466 P3d 1042

Defendant appeals a judgment of conviction for possession of methamphetamine, assigning error to the trial court's denial of her motion to suppress evidence seized by police after she gave consent to search her trailer. Defendant contends that the state failed to prove that defendant's consent was not the result of a threat to arrest or a promise of treatment rather than prosecution. *Held*: The trial court did not err in rejecting defendant's contention that the state had failed to prove that defendant's consent to search was not the result of coercion or promise of leniency. If defendant's consent was given as a result of a threat to arrest, the threat was not unlawful, because the officer had probable cause to make the arrest at the time he made the threat. The evidence does not support a finding that the officer made a promise of treatment in lieu of arrest in exchange for defendant's consent to search.

Affirmed.

Robert F. Nichols, Jr., Judge.

John Evans, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

Affirmed.

**ARMSTRONG, P. J.**

Defendant appeals a judgment of conviction for possession of methamphetamine, assigning error to the trial court's denial of her motion to suppress evidence seized by police after she gave consent to search her trailer. We review the denial of a motion to suppress for legal error, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), conclude that the trial court did not err, and affirm.

Rulings on a motion to suppress are reviewed to determine whether the trial court's findings of historical fact are supported by evidence and whether the trial court correctly applied legal principles to those facts. If the trial court did not make explicit findings, we presume that the facts were found in a manner consistent with the court's ultimate conclusion, if supported by the record. *Ehly*, 317 Or at 75.

In reviewing the trial court's ruling on defendant's motion, we consider only the evidence presented at the suppression hearing and recite the following facts consistent with the record and the trial court's express and implied findings. *State v. Norgren*, 287 Or App 165, 166, 401 P3d 1275 (2017), *rev dismissed*, 363 Or 40 (2018). An unnamed informant reported to state police that they had received a text message from a person seeking to purchase $20 of methamphetamine.[1] State Trooper Hargis testified at the suppression hearing that he determined that the text message had come from defendant and that he spoke to another informant, who told him that defendant's family wanted her to get into "treatment." Hargis went to talk to defendant, who lived in a trailer next to her father's house. Hargis parked his patrol car in front of the trailer without turning on his overhead lights. Defendant came out and met Hargis at the gate, where they had a cordial conversation. Hargis showed defendant a printout of the text message, and she admitted having sent it and having taken some methamphetamine the night before.

---

[1] The text read:

"I sold my watch to—I think it's Jana, I might say that wrong—at Safeway, she's paying me in the morning cash. Can I get a 20 tonight and maybe a bowl of weed, too, please?"

Hargis noticed that defendant was restless, twitching, and scratching her face. He testified that, based on his training and experience, he believed that defendant was under the influence of a stimulant. Defendant told Hargis that she had just gone to the grocery store and had not taken any controlled substances since returning. Hargis then suspected that defendant had committed the offense of driving under the influence of intoxicants.

Hargis told defendant that he was seeking her cooperation and that there were people who wanted her to get into treatment. Defendant agreed that she needed treatment.

Hargis asked defendant if she had any leftover methamphetamine in her trailer, and she said that she did not. Hargis then asked defendant if he could search the trailer for methamphetamine. Defendant said no, and that she "didn't want any trouble." Defendant told Hargis that her minor child was in the trailer, leading Hargis to suspect that defendant had committed the crime of endangering the welfare of a minor.

At that point, Hargis decided to move forward with a DUII investigation. He told defendant that he was investigating a crime and asked for her name and date of birth. He then advised defendant of her *Miranda* rights, which she said she understood. Hargis told defendant that he was calling for cover.

Defendant became scared and told Hargis, "please don't take me, I'm willing to cooperate, and you can search my trailer." Defendant testified at the hearing that Hargis made it sound like it would be worse for her if she did not cooperate.

After a cover officer arrived, Hargis and defendant entered the trailer. Just inside, Hargis told defendant that she was not under arrest, and he again obtained her consent to search the trailer.

Defendant then retrieved a small box with a packet of methamphetamine in it and gave it to Hargis. Hargis testified that he told defendant that he would have to contact

DHS and that "with her cooperation I was mostly likely going to issue her a citation and she could petition the Court for treatment." Defendant testified, "when he was in the trailer he told me, if I find anything else in this trailer I'm going to arrest you, he said make sure that you've given it all to me."

Defendant then led Hargis to the bathroom, where there was a mirror on the counter with a line of methamphetamine and a credit card on it. Hargis seized the items, wrote out a citation, and left.

Defendant was charged with possession of methamphetamine and moved to suppress the seized items. The trial court denied her motion, determining that defendant had consented to the search, and she filed a conditional plea of no contest.

Defendant contends on appeal that the trial court erred in denying her suppression motion, because the state failed to prove that defendant's consent to search was voluntary and not the result of coercion by threats of arrest or promises of leniency. *See State v. Tanner*, 236 Or App 423, 431, 236 P3d 775 (2010) (voluntariness requires that neither duress nor intimidation, hope nor inducement caused the defendant to confess). Whether the facts in the record are sufficient to establish voluntariness is a legal question that appellate courts assess independently. *State v. Acremant*, 338 Or 302, 324, 108 P3d 1139, *cert den*, 546 US 864 (2005).

It is the state's burden to show that defendant's consent to search was voluntary. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). The proper focus in determining the voluntariness of consent under Article I, section 9, is the defendant's actual understanding and intent. *State v. Blair*, 361 Or 527, 396 P3d 908 (2017); *State v. Stevens*, 311 Or 119, 132-38, 806 P2d 92 (1991) (voluntariness of defendant's consent to search was assessed by considering facts about defendant's actual mental state in addition to facts about police conduct). We address first defendant's contention that the state failed to prove that Hargis did not coerce defendant to allow him to search the trailer by implicitly threatening to arrest defendant if she did not consent.

Defendant argues that the record shows that, "at some point, [Hargis] promised not to arrest defendant if she cooperated, which implied the inverse—that he would arrest her if she refused to cooperate." The success of defendant's contention depends on when Hargis made the alleged implicit threat. It is undisputed that, after defendant handed Hargis the small box containing methamphetamine, Hargis had probable cause to arrest defendant for possession of methamphetamine. If the threat was made after that time, it was not constitutionally objectionable. *See State v. Moore*, 354 Or 493, 318 P3d 1133 (2013); *State v. Hirsch*, 267 Or 613, 622, 518 P2d 649 (1974) (if an officer threatens only to do something that the officer is legally permitted to do, the coercion caused by the threat is not constitutionally objectionable); *State v. Rodal*, 161 Or App 232, 242, 985 P2d 863 (1999) ("'If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable.'" (Quoting *State v. Williamson*, 307 Or 621, 627, 772 P2d 404 (1989) (Carson, J., concurring).)).

The trial court did not make an explicit finding as to whether or when Hargis made the alleged implicit threat. We assume that the trial court found the facts consistent with its ultimate conclusion that defendant's consent was voluntary, if supported by evidence in the record. *Stevens*, 311 Or at 126-27; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Defendant contends that there is no evidence in the record on *when* Hargis made the statement or that the record is ambiguous as to that fact and the state therefore has not met its burden. But the record is not ambiguous. Hargis testified at the suppression hearing that his statement to defendant (that with her cooperation, he would issue a citation) occurred *after* defendant had given him the box containing methamphetamine. Certainly, the implication is that, without *further* cooperation, defendant would be arrested rather than cited. But at that point, defendant had already given consent for the search, and Hargis had probable cause to arrest defendant for possession of methamphetamine. Therefore, the threat to arrest defendant, if made, would have been lawful. *See Hirsch*, 267 Or at 622 (if an officer threatens only to do something that the officer is legally permitted to do, the coercion caused by the threat

is not constitutionally objectionable).[2] We conclude that the trial court did not err in rejecting defendant's contention that the state had failed to prove that defendant's consent to search was not the result of coercion.[3]

Defendant contends that her consent was prompted by Hargis's promise of leniency if defendant cooperated. *See Tanner*, 236 Or App at 431. The trial court did not make explicit findings on that issue, but we assume, again, that the court found the facts consistent with its ultimate conclusion that defendant's consent was voluntary. *Stevens*, 311 Or at 126-27. In determining whether a defendant was involuntarily induced to give consent by a promise of leniency, the court considers whether the defendant reasonably understood that a promise of leniency was made and reasonably relied on the promise of leniency to give consent. *State v. Marshall*, 254 Or App 419, 432-33, 295 P3d 128 (2013). Defendant contends that Hargis offered leniency in the form of a citation rather than arrest if she would consent to a search. As we have concluded, however, the record permits the finding, consistent with the trial court's ultimate conclusion, that the offer of a citation in lieu of arrest in exchange for defendant's cooperation came after defendant had consented to a search of the trailer and after defendant had given Hargis the box containing methamphetamine. Thus, it could not have been an incentive for the consent.

Defendant contends that Hargis further offered leniency in the form of a promise of treatment if she would give her consent. Once again, the trial court did not make explicit findings, and we assume that the court found the facts consistent with its ultimate conclusion that defendant's consent was voluntary, if permitted by the evidence in the record. A promise of treatment does not render a defendant's consent involuntary unless the promise is offered for consent *in lieu of* prosecution. *See State v. Pollard*, 132 Or App

---

[2] Additionally, as noted, defendant testified that Hargis told her in the trailer that she would be arrested if he found "anything else." That testimony, especially the reference to "anything else," also permits the inference that Hargis made the statement after defendant had given Hargis the box.

[3] We reject without discussion defendant's contention that Hargis giving *Miranda* warnings and telling her that he was investigating a crime was an implicit threat of arrest.

538, 543, 888 P2d 1054, *rev den*, 321 Or 137 (1995) (promise of treatment, by itself, not sufficient to render defendant's confession involuntary). The suppression hearing record shows that, although Hargis told defendant that the goal was treatment and that there were people who wanted her to obtain treatment, there is no evidence from which a person could reasonably find that Hargis *promised* treatment or offered treatment as an alternative to arrest or prosecution if defendant gave her consent to search her trailer. Defendant could not reasonably have interpreted Hargis's reference to treatment as a promise of no prosecution in exchange for consent. The trial court did not err in denying defendant's suppression motion.

Affirmed.