Argued and submitted October 8, Court of Appeals affirmed December 30, 1986

# STATE OF OREGON,
*Respondent on review,*

*v.*

# ROCKNE M. NICKELL,
*Petitioner on review.*

(CC 85-CR-147; CA A37995; SC S33040)

730 P2d 1246

Lawrence J. Hall, Salem, argued the cause for petitioner on review. On the petition was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

**JONES, J.**

Defendant, Rockne M. Nickell, was found guilty of attempted murder, assault in the first degree and recklessly endangering another person. For sentencing purposes the circuit court merged the assault in the first degree and the reckless endangering convictions with the attempted murder conviction. The court found defendant to be a "dangerous offender" under ORS 161.725, and sentenced him to 30 years' imprisonment with a mandatory minimum sentence of 15 years, five years of which was for the use of a firearm under ORS 161.610.

The Court of Appeals affirmed defendant's sentence from the bench. We allowed review to determine if the legislature intended that ORS 161.725(1) encompass dangerous defendants who have been diagnosed as having psychotic disorders as well as dangerous defendants with "severe personality disorders."

Defendant was arrested on March 7, 1985, for Driving Under the Influence of Intoxicants (DUII). A breath intoxilyzer test registered a blood alcohol content of .23 percent. Defendant then requested that he be allowed to have a blood test. After being cited for DUII, defendant was transported by police to the emergency room at Southern Medical Center. Scott Holcomb, a center employe, was advised that defendant was there for a voluntary blood test.

Mr. Holcomb was employed by the center as an unarmed uniformed security guard. Defendant lit a cigarette despite numerous "no smoking" signs in the emergency room. Mr. Holcomb requested that defendant put his cigarette out. When he received no response, Mr. Holcomb removed the cigarette from defendant's mouth and put it out himself. When Mr. Holcomb then attempted to lead defendant to a seat in the waiting area, defendant kicked him in the groin. Mr. Holcomb struck defendant twice with his fist. Defendant started shouting "hostile, foul language" and refused to leave the medical center when requested. Police were called and they took defendant to his home.

Approximately 15 to 20 minutes later, defendant reappeared at the medical center armed with a loaded revolver. Defendant shot Scott Holcomb six times. Defendant

also pointed the revolver at the head of Dr. Hill, who was on duty in the emergency room, and at a bystander before defendant fled the scene.

Mr. Holcomb sustained permanent brain damage and partial loss of vision as a result of his wounds. Dr. Hill testified at trial that had the shooting occurred anywhere else other than the emergency room, Mr. Holcomb would not have survived.

When apprehended later at his home, defendant had the loaded revolver next to him. Defendant later told police, "I was not being treated fairly and that is why I shot him."

After jury verdicts of guilty to all counts were returned, the state requested that the court find defendant to be a dangerous offender under ORS 161.725. Under ORS 161.725, the court may sentence a defendant convicted of a Class A felony to imprisonment up to 30 years if, among other things, the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity. As required under the statute, the court ordered presentence and psychiatric reports.

Dr. Robert C. Luther, the psychiatrist appointed by the court to evaluate defendant for sentencing under ORS 161.725 and 161.735, testified at the presentence hearing that defendant suffered from a significant antisocial personality disorder which was overlaid by a psychosis of paranoid schizophrenia. The psychiatrist further testified that the antisocial personality disorder might well be worse if not for the overlaying psychosis. Dr. Luther, referring to a new study, found that defendant demonstrated four of the five major characteristics used to diagnose future dangerousness. These included violence as a juvenile, psychotic symptoms, physical abuse and psychiatric hospitalization. Dr. Luther concluded that defendant suffered not only from paranoid schizophrenia, but also that defendant had a significant antisocial personality disorder with a propensity to commit additional violent acts.

Two other psychiatrists who testified to defendant's competency to stand trial on this charge also believed defendant to be a dangerous person. This offense was the second

time defendant had used a firearm in a potentially life-threatening situation. The presentence report indicated other information presenting defendant as a dangerous, hostile and aggressive personality.

The trial court, after reviewing the evidence in the case, the presentence report, the psychiatric report and the evidence presented at the presentence hearing, concluded that defendant was a "dangerous offender" under the standards of ORS 161.725.

■ As we held in *State v. Huntley,* 302 Or 418, 730 P2d 1234 (1986), whether a defendant comes within ORS 161.725 and 161.735 is a question of fact to be determined by the court upon consideration of the presentence report, the psychiatric report, the evidence in the case or any evidence produced at the presentence hearing.

■ When the court makes the findings as set forth in *State v. Huntley, supra,* the prerequisites for the enhanced penalty are met. The fact that an offender is also psychotic does not render the statute inapplicable. Of course, if a person is only psychotic and does not in addition suffer from a severe personality disorder accompanied by a propensity to commit future criminal acts, the fact that the psychotic offender might be terribly dangerous would not bring him within this statute. Here, however, the trial court, based on ample evidence, found that this defendant, though psychotic, also met all the criteria required by the dangerous offender statutes. The trial judge correctly summed up his role, the basis for his ruling and a correct interpretation of the statute as follows:

> "* * * I'm going to address the issue of dangerous offender statute first * * *. [W]e're talking about ground number one, and that is the Defendant is being sentenced for a Class A felony, and the Court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.
>
> "First of all I think the Court needs to make a finding is the Defendant dangerous? We have heard from Dr. Luther on this issue. It's his opinion * * * that he feels Mr. Nickell is a dangerous person. * * * Dr. Williamson * * * was of the opinion that Mr. Nickell is a dangerous person. I think other records in the court that were received from the Mental Health Department also indicated that. And I think further

based upon the fact that this is Mr. Nickell's second episode involving the use of a firearm in a potentially life-threatening situation * * * is another piece of information the Court would have to consider as to whether or not Mr. Nickell is a dangerous person. * * * [T]he presentence report also quotes some language from past reports indicating that Mr. Nickell in another expert's opinion represented a dangerous, hostile and aggressive personality. * * *

"Also there's been testimony and also statements made that Mr. Nickell has a fascination with firearms, and * * * in addition to that, we are talking about a chronic paranoid schizophrenic condition superimposed over an antisocial personality disorder, * * * neither one of those have a very good prognosis for correction, or for that matter improvement.

"I think given all of those factors the Court would have to say that regarding the issue of dangerousness that the Court would find that Mr. Nickell does represent a danger to society, and that an extended period of incarceration or correctional treatment is necessary for the protection of society.

"* * * [T]he other elements of the statute, of course, attempted murder is a Class A felony which fits that qualification. The main attack here today has been on whether or not chronic paranoid schizophrenia superimposed over an antisocial personality disorder amounts to a severe personality disorder. I suppose that the words severe personality disorder do present a problem for the Court on interpretation. However, I cannot imagine when the legislature enacted this statute that if we had a situation where a psychiatrist or the experts would come in and say that we have an individual here who suffers from chronic paranoid schizophrenia or acute paranoid schizophrenia, because the diagnostic label on that is a severe — is a psychosis, a psychotic disability, that the Court is then precluded from saying that that isn't a severe personality disorder that may indicate a propensity toward criminal activity. Let's assume for a minute that a person had one diagnosis as suffering from acute paranoid schizophrenia. * * * [A]ll of the other criteria were met and the expert would testify there was an indication toward a propensity toward criminal activity. Is the Court then because of the diagnostic procedure precluded from utilizing this statute and finding somebody to be dangerous? First of all, I think psychotic thought disorders have to be looked at as more severe and more serious than personality disorders. A number of people in this court have personality disorders. * * * I can't make sense out of the fact that the legislature would ask a trial judge

who is sentencing somebody to take such a restricted approach and look solely to a label and not what this statute is intended to go towards. So I think there is evidence before this Court that Mr. Nickell does suffer from a severe personality disorder, as I would interpret that language, and * * * does indicate a propensity toward criminal activity * * *. Therefore, the Court would find that the criteria under [ORS] 161.725 and 735 have been satisfied, and the Court will find that Mr. Nickell is a dangerous offender as that term is defined by statute."

The sentence the trial judge imposed complied with ORS 161.725 and is affirmed. The Court of Appeals is affirmed.